IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CINCINNATI INSURANCE CO.,** : | **CIVIL ACTION** |
| Plaintiff, : | |
| : | |
| v. : | |
| : | |
| **DEVON INTERNATIONAL, INC., et al.,** : | **NO. 11-5930** |
| Defendants. : | |

**M E M O R A N D U M**

**GENE E.K. PRATTER, J.**                                                                                          **FEBRUARY 15, 2013**

      Plaintiff Cincinnati Insurance Co. ("Cincinnati") and Defendants Devon International, Inc., Devon IT, Inc., Devon International Group, and Devon International Industries, Inc. (collectively, "Devon") have filed cross-motions for summary judgment in this insurance coverage dispute. For the reasons that follow, the Court will grant Cincinnati's motion and deny Devon's motion.

**I.  Background**

*A.  Procedural History*

      On September 20, 2011, Cincinnati filed its complaint in this action and sought a declaratory judgment defining its obligations to Devon. The parties differ over the extent to which Cincinnati must provide Devon with a defense and indemnification in litigation related to allegedly defective drywall that Devon imported from China into the United States. On April 18, 2012, Devon and Cincinnati submitted a joint stipulation of facts. The parties subsequently filed cross-motions for summary judgment arguing that they were entitled to prevail as a matter of law based on the stipulated facts before the Court.[1]

---

[1] On July 13, 2012, Devon filed a motion to stay this action, but later its counsel stated at oral argument that Devon wished to withdraw the motion to stay. *See* Transcript of Oral Argument (hereinafter "Transcript") at 2:17 (Docket No. 42).

1

*B. Factual Background* [2]

Devon International, Devon International Industries, and Devon International Group were named insureds under Cincinnati Insurance Policy No. 365 83 38, which was in effect from November 20, 2008, until November 20, 2010. The policy was issued to Devon under a pair of one-year policy periods, and included commercial general liability coverage and commercial umbrella coverage. Under the policy's commercial general liability coverage form, Devon and Cincinnati agreed that the insurance policy would cover only bodily injury or property damage if (1) "[t]he bodily injury or property damage is caused by an occurrence that takes place in the coverage territory" and (2) "[t]he bodily injury or property damage occurs during the policy period." The coverage form further defined "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Although Policy No. 365 83 38 included commercial umbrella coverage, such coverage only applied if an injury was caused by an occurrence that took place during the policy period.

On February 8, 2006, Devon International Trading (the predecessor of Devon International Industries), a sourcing agent for Chinese products, received an order from the North Pacific Group for Chinese drywall. Devon filled this order by purchasing drywall from Shandong, a Chinese drywall manufacturer, and then shipping that drywall to Florida. All the drywall that Devon imported came by way of a single order to Shandong and a single shipment from China to Pensacola, Florida. Some of the drywall was damaged en route to Florida, and one of Devon's insurers took possession of this damaged drywall and sold a portion of it at salvage.

---

[2] The parties have jointly stipulated to these facts for purposes of their cross-motions for summary judgment. *See* Docket No. 20.

In July 2006, North Pacific accepted delivery of some (but not all) of the undamaged drywall. Devon International Trading then sold the remaining undamaged drywall to other individuals and entities. By April 2009, Devon International Industries received a letter from counsel for North Pacific requesting a defense and indemnification for a claim arising from alleged defects in the imported drywall. Devon thus became aware that the imported drywall allegedly contained an improper amount of sulfur.

Devon subsequently faced what the parties describe as a "multitude of lawsuits" in various jurisdictions arising from the allegedly defective drywall. The plaintiffs in these suits generally allege that sulfur emitted by the drywall damaged their real and personal property, but they do not allege that the drywall was defective because it was damaged en route to Florida. Some of the plaintiffs in these lawsuits allege that they sustained damage between November 20, 2008, and November 20, 2009 as a result of the drywall imported by Devon International Trading, and others allege that they sustained damage between November 20, 2009, and November 20, 2010 due to this drywall.

## II.  Legal Standard

A court shall grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable jury could return a verdict for the non-moving party. *Kaucher v. Cnty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A factual dispute is "material" if it might affect the outcome of the case under governing law. *Id.* (citing *Anderson*, 477 U.S. at 248). Under Rule 56, the Court must view the evidence presented in the motion in the light most favorable to the non-moving party. *See*

*Anderson*, 477 U.S. at 255.  However, "[u]nsupported assertions, conclusory allegations, or mere suspicions are insufficient to overcome a motion for summary judgment." *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 252 (3d Cir. 2010).

The movant bears the initial responsibility for informing the Court of the basis for its motion for summary judgment and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Where the non-moving party bears the burden of proof on a particular issue, the moving party's initial burden can be met simply by "pointing out to the district court that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.  After the moving party has met its initial burden, the non-moving party must set forth specific facts showing that there is a genuinely disputed factual issue for trial by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute."  Fed. R. Civ. P. 56(c).  Summary judgment is appropriate if the non-moving party fails to rebut by making a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.[3]

---

[3] The standards by which a court decides a summary judgment motion do not change when, as here, the parties file cross-motions. *See SEPTA v. Pa. Pub. Util. Comm'n*, 826 F. Supp. 1506, 1512 (E.D. Pa. 1993).

**III.  Cross-Motions for Summary Judgment**

*A.     Legal Standard*

### 1.      Three Approaches to Determining the Number of "Occurrences."

Devon and Cincinnati agree that the insurance policy at issue is an "occurrence" policy governed by Pennsylvania law.  Therefore, the central issue in the parties' cross-motions for summary judgment is whether the underlying claims against Devon arise out of a single occurrence or multiple occurrences.  Courts "have applied three tests" to determine "whether there is a single or multiple occurrences" for purposes of insurance coverage.  *Am. Family Mut. Ins. Co. v. Wilkins*, 179 P.3d 1104, 1110 (Kan. 2008).  A majority of courts determine the number of occurrences by looking to the cause or causes of an injury, while other courts focus on the effects of an insured's action.  *Id.*  Additionally, a "third category of courts consider the event that triggered liability [of the insured] to determine whether there are single or multiple occurrences[.]"  *Id.*; *see also Metro. Life Ins. Co. v. Aetna Cas. & Sur. Co.*, 765 A.2d 891, 900-901 (Conn. 2001) (noting that courts follow one of these three approaches).

Based on the parties' arguments, the two relevant tests for determining the number of occurrences are the "cause" approach and the "liability-triggering event" approach.[4]  Two seminal cases that illustrate these competing approaches are *Appalachian Insurance Co. v. Liberty Mutual Insurance Co.*, 676 F.2d 56 (3d Cir. 1982), and *Maurice Pincoffs Co. v. St. Paul Fire & Marine Insurance Co.*, 447 F.2d 204 (5th Cir. 1971).  *See Dow Chem. Co. v. Associated Indem. Corp.*, 727 F. Supp. 1524, 1528-29 (E.D. Mich. 1989) (noting that *Appalachian* adopted

---

[4] Neither Devon nor Cincinnati argues that the "effects" approach applies here.  *See* Transcript at 13:16-17.  However, Devon contends that Pennsylvania has adopted a version of the "cause" approach that operates in a manner akin to the "liability-triggering event" approach by focusing on the "negligence of the insured."  *See* Transcript at 20:9-18, 21:21-22:2, 24:14-15.

the "cause" approach while *Pincoffs* adopted the "liability-triggering event" approach); *Metro. Life Ins.*, 765 A.2d at 901 (same).

In *Appalachian*, the Third Circuit Court of Appeals applied the "cause" approach to decide how many "occurrences" took place under an insurance policy. *See Appalachian*, 676 F.2d at 61. The insured had adopted certain employment policies applicable to its female employees, was sued in a sex discrimination class action based on those policies, and sought indemnification from its insurer after it settled the class action. *See id.* at 58-59. The Third Circuit Court of Appeals held that "there was but one occurrence for purposes of policy coverage" because the "injuries for which [the insured] was liable all resulted from a common source: [the insured's] discriminatory employment policies." *Id.* at 61. In other words, even though the insured was liable each time it discriminated against a female employee, there was only one "occurrence" because all the discrimination "stem[med] from one proximate cause." *Id.*

Although *Appalachian* is a Third Circuit case, it does not necessarily control the Court's decision here, because Massachusetts law governed the insurance policy at issue in *Appalachian*. *See Liberty Mut. Ins. Co. v. Treesdale, Inc.*, 418 F.3d 330, 335 (3d Cir. 2005). Here, the parties agree that Pennsylvania law applies, and Devon argues that Pennsylvania law requires the Court to follow *Pincoffs* rather than *Appalachian*. *See* Transcript at 22:25--23:14. In *Pincoffs*, an insured imported contaminated bird seed and then re-sold that seed to eight dealers. *See Pincoffs*, 447 F.2d at 205. The district court held that there was only one "occurrence" under the insured's policy because all the injuries were caused by a single incident of contamination. *Id.* at 206. However, the Fifth Circuit Court of Appeals reversed and held that "the 'occurrence' to which the policy must refer is the occurrence of the events or incidents for which [the insured] is

6

liable." *Id.* Therefore, "each of the eight sales made by [the insured] . . . [constituted] a new exposure and another occurrence." *Id.*

### 2. Pennsylvania's Approach to Determining the Number of "Occurrences."

Given that the parties agree as to the applicability of Pennsylvania law, Pennsylvania's approach to determining the number of occurrences becomes central to the resolution of these cross-motions. In *Donegal Mutual Insurance Co. v. Baumhammers*, 938 A.2d 286 (Pa. 2007), the Pennsylvania Supreme Court addressed for the first time how to determine the number of occurrences for purposes of insurance liability. *See id.* at 293-94. *Baumhammers* involved an insurance company that asked the Pennsylvania Supreme Court to decide whether the alleged negligence of its insureds constituted a single "occurrence" under the applicable insurance policy. *Id.* at 288. A suit against the insureds alleged that their negligence enabled their son to commit a series of shootings over a two-hour period. *Id.* at 288-89. The insurer argued that there was a single "occurrence" under its policy, while the insureds contended that each of the shootings of the six victims constituted a separate "occurrence." *Id.* at 293.

The *Baumhammers* court began its analysis by noting that "[t]here are two key competing approaches for determining the number of occurrences for purposes of [insurance] liability": the majority "cause" approach and the minority "effects" approach. *Id.* at 293. The court then held that the "cause" approach was the proper method to use for determining the number of occurrences. *Id.* at 294. In reaching this holding, *Baumhammers* relied on *Washoe County v. Transcontinental Insurance Co.*, 878 P.2d 306 (Nev. 1994), *D'Auria v. Zurich Insurance Co.*, 507 A.2d 857 (Pa. Super. Ct. 1986), and *General Accident Insurance Co. of America v. Allen*, 708 A.2d 828 (Pa. Super. Ct. 1998), three cases that adopted the "cause" approach. *See Washoe*, 878 P.2d at 308 ("As long as the injuries stem from one proximate cause there is a single

occurrence.") (citations and quotations omitted); *D'Auria*, 507 A.2d at 860-61 (explicitly following *Appalachian* and holding that there was only one occurrence because the underlying plaintiff's injury only had one cause); *see also Allen*, 708 A.2d at 833 (adopting the cause approach, which requires "an inquiry . . . into whether there was 'but one proximate, uninterrupted, and continuing cause which resulted in all of the injuries and damage.'") (quoting *D'Auria*, 507 A.2d at 860). *Baumhammers* also established that an "occurrence" must "be an event over which [an insured] had some control," and that the number of injured parties does not determine how many occurrences exist under an insurance policy. *See Baumhammers*, 938 A.2d at 296. Thus, under such analysis, if all the injuries suffered by the underlying plaintiffs in this case stem from a single cause over which Devon had some control, then there would be a single occurrence under the parties' insurance policy.[5]

### B. *Application*

Under Pennsylvania law, it is the duty of the court to interpret an insurance policy and thereby determine the existence of insurance coverage. *See Baumhammers*, 938 A.2d at 290. In this case, the Court must evaluate whether coverage exists under Policy No. 365 83 38 by using

---

[5] The Court recognizes that certain language in *Baumhammers* suggests that the court intended to adopt something akin to the "liability-triggering event" approach rather than the "cause" approach. However, in addition to holding that it was following the "prevailing view" and the "cause approach," *id.* at 293-94, *Baumhammers* stated that the act "that began the sequence of events that resulted in the eventual injuries" to the underlying plaintiffs was the sole occurrence under the insurance policy, *id.* at 296. Moreover, as noted above, three cases that *Baumhammers* relied on adopted the "cause" approach, including two cases from Pennsylvania appellate courts. Finally, the only post-*Baumhammers* court to consider its holding on this issue stated (albeit in dicta) that *Baumhammers* "look[ed] to proximate cause to determine the number of occurrences under an insurance policy." *See Cher-D, Inc. v. Great Am. Alliance Ins. Co.*, No. 05-5936, 2009 U.S. Dist. LEXIS 30206, at *19 (E.D. Pa. Apr. 7, 2009); *see also id.* at *24 ("*Baumhammers* turned to the single 'cause' of the loss to find a single 'occurrence' under an insurance policy[.]"). Based on *Baumhammers*, the cases cited by the *Baumhammers* court, and the reasoning of *Cher-D*, it appears that the cause approach does in fact govern the issue of how to determine the number of occurrences for insurance purposes under Pennsylvania law. Therefore, this Court finds that there is only one "occurrence" if "[t]he injuries for which [Devon] was liable all resulted from a common source[.]" *Appalachian*, 676 F.2d at 61.

the "cause" approach to determine how many "occurrences" took place under the policy. If all the claims against Devon "stem from one proximate cause," *Appalachian*, 676 F.2d at 61, and Devon "had some control" over that cause, *Baumhammers*, 938 A.2d at 296, then there is a single occurrence.

Here, all the injuries to the underlying plaintiffs and claims against Devon originate from a common source: Devon's single purchase and shipment of defective drywall from Shandong. Moreover, Devon "had some control" over the cause of the injuries, in that it chose to purchase and distribute the defective drywall. Therefore, the Court finds that there is only one "occurrence" for purposes of insurance coverage. *See Appalachian*, 676 F.2d at 61 (finding a single occurrence because the "injuries for which [the insured] was liable all resulted from a common source"); *Fed. Ins. Co. v. Dentsply Int'l Inc.*, No. 06-991, 2007 WL 4150664, at *3 (M.D. Pa. Nov. 19, 2007) (noting that a single occurrence took place under Pennsylvania law when an insured sold a defective product to various dentists, because all the resultant injuries "arose from a common source: [the insured's] distribution of [the defective product]"); *see also id.* ("If a court can identify a common source of the injuries, and thus a single occurrence, it is immaterial that multiple individuals were injured as a result.").

Having found that there is a single occurrence under the parties' insurance policy, the Court must determine when that occurrence took place. Under the terms of the policy, coverage only takes effect if an injury occurs during a policy period. Therefore, Devon would not have coverage under the second policy period if the occurrence took place before November 20, 2009.

In Pennsylvania, "[a]n occurrence happens when the injurious effects of the negligent act *first manifest themselves* in a way that would put a reasonable person on notice of an injury." *D'Auria*, 507 A.2d at 861 (emphasis in original); *see Dentsply*, 2007 WL 4150664, at *4 ("[T]he

9

general rule is that a tort 'occurs' for insurance coverage purposes when the injuries caused by the tort first become apparent or manifest themselves.") (citations and quotations omitted). Here, the parties have stipulated that some of the underlying plaintiffs were allegedly damaged by Devon's imported drywall during the first policy period, to wit, November 20, 2008, through November 19, 2009. The effects of the imported drywall thus manifested themselves during that first policy period, and the single occurrence took place before the second policy period began on November 20, 2009. *See* Transcript at 16:11-18 (Devon's counsel stipulating that "if there is a single occurrence, it . . . occurred before the second policy [period].").

## IV.  Conclusion

For the foregoing reasons, the Court finds that a single occurrence took place under the parties' insurance policy before the second policy period began. Therefore, the Court grants Cincinnati's motion for summary judgment and denies Devon's motion for summary judgment.

An Order consistent with this Memorandum follows.

BY THE COURT:

S/Gene E.K. Pratter
GENE E.K. PRATTER
United States District Judge